UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ALFRED LYNCH AND, SANDRA LYNCH, | § § § § § § § § § § § § § | Civil Action No.:  6-21-cv-00795 |
| Plaintiffs, | | PLAINTIFFS' ORIGINAL COMPLAINT |
| v. | | DEMAND FOR JURY TRIAL |
| STARBUCKS CORPORATION AND PACTIV PACKAGING, INC. | | |
| Defendants. | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

1.  Plaintiffs ALFRED LYNCH and SANDRA LYNCH ("Plaintiffs") complain of STARBUCKS CORPORATION and PACTIV PACKAGING, INC. (collectively "Defendants") and respectfully show the following:

### I.
### PARTIES

2.  Plaintiffs ALFRED LYNCH and SANDRA LYNCH are residents and citizens of McLennan County, Texas.

3.  Defendant STARBUCKS CORPORATION ("STARBUCKS") is a Washington Corporation which upon information and belief is domiciled and doing business from its headquarters in Seattle, Washington, and authorized to do business in Texas.

4. Defendant PACTIV PACKAGING, INC. ("PACTIV") is a Delaware Corporation which upon information and belief is domiciled and doing business from its headquarters in Lake Forest, Illinois.

## II.
## JURISDICTION AND VENUE

5. The District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. section 1332(a). The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Plaintiffs ALFRED LYNCH and SANDRA LYNCH are citizens of McLennan County, Texas. Defendant STARBUCKS is a corporation domiciled the State of Washington and is authorized and doing business through the State of Texas. Defendant PACTIV is a corporation incorporated under the laws of Delaware and is authorized and doing business through the State of Texas.

6. Venue is proper before this Court under 28 U.S.C. section 1391(b)(2) because the events giving rise to this claim occurred in Bexar County, Texas and the Plaintiffs reside in McLennan County Texas.

## III.
## FACTUAL ALLEGATIONS

7. On or about September 8, 2019, Plaintiffs visited the STARBUCKS retail store on East Houston Street in San Antonio, Texas.

8. Plaintiff SANDRA LYNCH walked into the Starbucks store to obtain beverages while Plaintiff ALFRED LYNCH waited in the vehicle. Starbucks furnished to Plaintiff SANDRA LYNCH a Venti Mint Tea.

9. Plaintiff SANDRA LYNCH returned to the vehicle, entered the passenger side door, and handed the Venti Mint Tea to Plaintiff ALFRED LYNCH. Starbucks' employees inserted a green "splash stick" into the lid of the Venti Mint Tea, which snaps into the sipping hole of the Pactiv/Starbucks beverage lid.

10. Plaintiff ALFRED LYNCH held the Venti Mint Tea with his right hand while he drove his vehicle into a traffic lane of stopped vehicles. He transferred the cup to his left hand to remove the green splash stick in order to sip his tea.

11. However, when Mr. LYNCH pulled on the green splash stick, the entire lid came-off the Venti cup, whereupon scalding tea fell to Mr. LYNCH's upper thigh and genitals. Mr. Lynch was trapped in the vehicle, in traffic, while attempting to pull the burning hot fabric up off of his legs to alleviate the pain.

12. Plaintiff ALFRED LYNCH was taken to the nearest emergency burn unit via medical transport and received a dose of morphine for pain.

13. Plaintiff ALFRED LYNCH subsequently treated at a medical hospital for two days due to the 2nd degree burns sustained in the incident.

14. Upon information and belief, STARBUCKS contracted with hot beverage system manufacturers to design, test and provide specifications for hot beverage cups, lids, sleeves and other related service products, including splash sticks, which were to be used by STARBUCKS associates and consumers without inspection for defects. STARBUCKS issued production specifications to vendors who produced hot beverage cups, lids, sleeves and other related service products, including splash sticks. Upon information and belief, STARBUCKS issued those

specifications to Defendant PACTIV, which manufactured the lid that failed on the Venti Mint Tea and resulted in the burn to Plaintiff ALFRED LYNCH.

15. Upon information and belief, the STARBUCKS' hot beverage system was originally designed and specified to be made of materials resistant to heat-degradation, configured to create a uniform seal with the specifically configured lip of the hot beverage cup, and in a manner specified to minimize cup deflection during handling which would otherwise unseat the lid from its sealed state. The STARBUCKS lid design was an outer seal as opposed to an inner seal technology. An "outer seal" lid seals to the cup lip primarily on the outside edge of the cup lid, and is vulnerable to lid displacement due to deflection of the cup during foreseeable handling. An "inner seal" lid seals to the cup lip either primarily on the inside edge of the cup lip, or seals with both the inside and outside edge of the cup lip, eliminating the risk of lid displacement during foreseeable handling.

16. Upon information and belief, STARBUCKS hot coffee drinks are served to consumers at approximately 130 degrees F. for children and 150 degrees F. for adults. Upon information and belief, water used for tea drinks exits the heating urn at 195-205 degrees F., which in the instance of a Venti Mint Tea, is released from the urn over one or more tea bags resting in the cup bottom. The two tea bag strings are often wound and then draped over the cup lip. The cup is often sleeved or double-cupped prior to filling. The cup is then lidded and served as soon as possible at temperatures ranging from 190-205degrees F. The strings of the tea bags immersed in STARBUCKS hot tea drinks wick hot tea out of the lid and outside the cup.

STARBUCKS uses the same cups and lids for serving hot tea drinks and hot coffee drinks.

## IV.
## CAUSES OF ACTION
## NEGLIGENCE

(Against All Defendants)

17. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

18. Defendants, including each unknown and as yet unidentified tortfeasor (hereinafter collectively referred to as "Defendants") owed a duty to Plaintiffs to test, design, re-design, manufacture, inspect, recall, store, break-bulk, distribute and deploy the hot beverage container system components (i.e. lids, cups, tea bags, sleeves, green splash sticks) for the Venti Mint Tea beverage in a manner that was safe for preparation at temperatures exceeding 180 degrees F., and which was likewise safe for the use and/or foreseeable misuse by STARBUCKS customers.

19. <u>Study, Training and Execution</u>: Due to the scalding temperatures of the dual tea-bag beverages, Defendants each owed a heightened duty to customers to study the use of fixtures and storage equipment to minimize handling damage, to train their employees properly in the shipping, unpacking, stacking and loading of restaurant receptacles, and to train Starbucks employees in affixing beverage lids which would allow customers to safely consume the beverages from defect-free container systems.

20. Defendants breached their respective duties of reasonable care to the Plaintiffs by failing to discharge the duties set forth above. Defendants knew or should have known that the breach of the duties, and failure to address the risk of harm, was unreasonable and constituted negligence.

21. Defendants' breach of their respective duties was a substantial factor in causing the Plaintiffs to suffer personal injury and property damage, to incur medical expenses and to suffer general damages in an amount according to proof in excess of $75,000.

22. Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had knowledge of the defective lids and lid and splash stick fit issues involving tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.

23. With the knowledge of prior incidents occurring daily with the hot teas, Defendants STARBUCKS and PACTIV acted or failed to act by failing to research, analyze, adopt, and deploy a reasonably safe alternative solution. Defendants' acts or failures to act were an extreme departure from the ordinary standard of conduct such that their conduct arose to the level of gross negligence.

## STRICT PRODUCT LIABILITY

(Manufacturing Defect- Against PACTIV and

Manufacturing Defendants)

24. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

25. Defendant PACTIV and Manufacturing Defendants are strictly liable to Plaintiffs pursuant to Section 402B, Restatement (Second) of Torts, as adopted by the Supreme Court of Texas. *Crocker v. Winthrop Lab. Div. of Sterling Drug, Inc.,* 514 S.W.2d 429, 431 (Tex. 1974). Defendants are liable because:

   a. Pursuant to standards designs and specifications, the Manufacturing Defendants manufactured hot beverage cups, lids, splash sticks and sleeves as components to a hot beverage container system to be used by STARBUCKS in delivering its beverages to Plaintiffs and consumers, whom were all expected to use or foreseeably misuse the hot beverage container system without inspection for defects;

   b. Upon information and belief, the hot beverage container system components contained manufacturing defects when they left the possession of the Manufacturing Defendants in that: i) the lid was manufactured out of tolerance or standard in such a manner to prevent the lid recess from forming and sealing to the lip of the cup in the fashion intended by the manufacturer; and ii) the lid and the cup were manufactured of materials that deformed under the increased heat of STARBUCKS' dual tea beverage before it could be safely transferred to the Plaintiffs, and in such a manner that the tea bag strings

    would prevent the lip/cup seal from occurring; the heat-deformed lid adhered to the green splash stick in a manner which prevented removal of the splash stick from the defective lid without inadvertently removing the lid.

c. Plaintiffs were harmed while using or foreseeably misusing the defective beverage container.

d. The defect in the beverage container system was a substantial factor in causing Plaintiffs' harm.

e. Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had knowledge of the defective lids and lid/green splash stick fit and deformation issues involving tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.

f. Defendant PACTIV and Manufacturing Defendants knew or had reason to know that alternative production processes and materials existed prior to the incident which yielded no defective lids.

26. Accordingly, the conduct of Defendants STARBUCKS and PACTIV in failing to research, analyze and deploy a reasonably safe alternative solution constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs, justifying an award of exemplary damages.

## STRICT PRODUCTS LIABILITY

(Design Defect Against All Defendants)

27. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

28. Pursuant to Section 82.005(a) & (b) of the Texas Civil Practice and Remedies Code, Plaintiffs bring this design defect cause of action because there was a safer alternative design and because the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery. Further, Defendants' use of the safer alternative design was technically and economically feasible; was commercially available as it was developed and tested with STARBUCKS and PACTIV in an advisory capacity from 2011 through 2015 and would have prevented or reduced the risk of injury to Plaintiffs without impairing the utility of the hot beverage system.

29. The Defendants manufactured, sold or distributed hot beverage cups, lids and green splash sticks, and sleeves as components to a hot beverage container system to be used by STARBUCKS in delivering its beverages to Plaintiffs and consumers, whom were all expected to use or foreseeably misuse the hot beverage container system without inspection for defects.

30. The Defendants used the same hot beverage container system to deliver the finished product – a container system filled with a hot beverage where a lid recess fit to the cup lip in a manner that effectively sealed the hot liquid in the container. Consumers, and Plaintiffs herein, expected the lids to remain in place while

consuming the hot beverages, and expected the lids to be removable and subject to re-seating if they wanted to add cream or other liquids to the beverage. STARBUCKS expected that Consumers, and Plaintiffs herein, would rely on the seal in the reasonable handling and drinking of hot STARBUCKS beverages. Further, Plaintiffs and consumers were expected by all Defendants to place upward force on the defective lid and hot beverage system in order to remove the splash stick from the drinking hole in order to consume the beverage.

31. The Defendants knew that STARBUCKS would use the hot beverage container system to deliver hot beverage products of varying temperatures ranging from 120 degrees F. to more than 200 degrees F. if a tea beverage was being delivered. The Defendants designed and sold the beverage containers as a part of STARBUCKS' finished product line, with full knowledge that STARBUCKS intended to, and did, serve hot tea products to customers with one or more tea bag strings draped over the cup lip when the cup was being lidded by a STARBUCKS associate or barista.

32. Upon information and belief, through the use and foreseeable misuse experience of STARBUCKS employees, STARBUCKS customers and product researchers, STARBUCKS and the component manufacturers learned that the tea bag strings wick hot liquid through the string, through the cup/lip seal, and out of the cup. STARBUCKS tea drinks would drip such that the tea tag (at the end of the tea string) would sometimes be tucked into the cup sleeve by associates to reduce the flow of hot tea liquid from the tea lid and onto customers' hands.

33. Upon information and belief, the tea bag strings in their dry state, and to a greater extent in their wet and swollen state, interfered with the lip/cup seal of the hot beverage container by either preventing the seal as an obstruction (especially when the two strings were wound together), or acting to deform the heated and pliable lid in two places so that a seal would not occur or degrade, especially where the strings were lain over two different areas of the lip. When combined with foreseeable cup deflection from associates grasping and handling the Venti hot tea beverage prior to delivery to the customer, the heat-deformed lid forming around the green splash stick, and the lack of the lip/cup seal made the lid unstable and not affixed to the cup as originally designed and expected for tea and non-tea hot beverage products.

34. STARBUCKS had notice prior to the present matter of the consequences of serving the hotter double tea beverages with tea bag strings in the same container system STARBUCKS used for serving the less hot beverages without lid seating obstructions – cup and lid deformation resulting in "lid-off" spill and injury incidents during foreseeable handling by STARBUCKS associates and customers alike. Further the formation of heat-deformed lid plastic around the green splash stick created an upward force lever by which an inadvertent lid-off incident would occur.

35. The component parts of the STARBUCKS dual tea beverage container system, and the finished dual tea product as a whole, did not perform as safely as an ordinary consumer would have expected it to perform when used or foreseeably misused in an intended or reasonably foreseeable manner. The performance of the

Starbucks drink components and hot beverage container system as a whole was unreasonably dangerous and was therefore defective.

36. During reasonably foreseeable handling by the STARBUCKS associate and later as the dual tea bag beverage was being foreseeably handled by Plaintiff ALFRED LYNCH, including foreseeable removal of the green splash stick, the lid either never obtained, or lost its seat on the cup lip. He suffered severe burns as result when the tea escaped the Venti cup.

37. The failure of the dual tea beverage product as a whole, and/or the failure of its component parts, to perform safely was a substantial factor in causing Plaintiffs' harm.

38. Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and executive officers concerning defective cups and lids. Defendants had prior knowledge of the defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.

39. Accordingly, the conduct of Defendants STARBUCKS and PACTIV in failing to deploy a reasonably safe alternative solution constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs.

## LOSS OF CONSORTIUM/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

40. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

41. Plaintiff SANDRA LYNCH was at all times the legal spouse of Plaintiff ALFRED LYNCH and was present in the front seat of the automobile when the lid came off the tea cup. Plaintiff SANDRA LYNCH observed the tea outside the cup and falling upon her husband, followed by his screams. Plaintiff SANDRA LYNCH observed red marks on Mr. Lynch's body where the tea had burned him. Through days and nights at the hospital, Plaintiff SANDRA LYNCH observed the painful dressing changes, the results of debridement and the painful removal of Mr. Lynch's dead skin from the most intimate areas of his body.

42. Plaintiff SANDRA LYNCH became Mr. Lynch's caretaker and assistant after Mr. Lynch was released from the hospital. Plaintiff SANDRA LYNCH assisted Mr. Lynch in his recovery and rehabilitation.

43. Plaintiff SANDRA LYNCH was denied the care, comfort and society of her husband, in addition to his household services in the wake of contemporaneously witnessing the scalding of her husband's most intimate parts of his body. Plaintiff SANDRA LYNCH suffered shock and emotional distress as a result.

44. Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and

associates concerning defective cups and lids; Defendants had knowledge of the defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.

45. With the knowledge of prior incidents occurring daily with the hot teas, Defendants STARBUCKS and PACTIV acted or failed to act by failing to research, analyze and deploy a reasonably safe alternative solution. Defendants' acts or failures to act were an extreme departure from the ordinary standard of conduct such that their conduct arose to the level of gross negligence. Further, or alternatively, the conduct alleged above by Defendants STARBUCKS and PACTIV constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs.

## VICARIOUS LIABILITY

(Against Defendant STARBUCKS)

46. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

47. Plaintiffs were harmed by the mishandling of the hot teas by the STARBUCKS associate, who was acting within the course and scope of their employment as a STARBUCKS associate at the time of delivering the hot tea to Plaintiff SANDRA LYNCH. Either the STARBUCKS associate did not adequately seal the hot tea lid to the lip of the cup before they transferred the hot tea to Mrs. Lynch, or the lid was broken or otherwise defective when the STARBUCKS associate

lidded the cup which eventually failed and burned Mr. Lynch. The defect in the lid and/or the negligent preparation of the drink was not patently defective or even visible to Mrs. Lynch at the time the hot tea was prepared, or at the time of transfer.

## PRAYER

48. WHEREFORE, Plaintiffs pray for damages to be awarded as follows:

   a. General damages according to proof;

   b. Compensatory damages according to proof;

   c. Exemplary Damages.

Dated: August 2, 2021

                EGGLESTON KING, LLP

                */s/ David D. Rapp*
                David Rapp
                SBN No.24027764
                102 Houston Avenue, Suite 300
                Weatherford, Texas 76086
                (817) 596-4200
                david@ektexas.com

                Attorneys for Plaintiffs
                ALFRED & SANDRA LYNCH

## DEMAND FOR TRIAL BY JURY

Plaintiffs ALFRED LYNCH and SANDRA LYNCH hereby demand trial by jury.

Dated: August 2, 2021

EGGLESTON KING, LLP

*/s/ David D. Rapp*
David Rapp
SBN No. 24027764
102 Houston Avenue, Ste. 300
Weatherford, Texas 76086
(817) 596-4200
david@ektexas.com

Attorneys for Plaintiffs
ALFRED & SANDRA LYNCH

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

*/s/ David Rapp*
_____
David Rapp